DOUGLAS CROCKER & others, trustees, *vs.* NEW ENGLAND POWER COMPANY & another.[1]

Worcester. October 9, 1964. — December 3, 1964.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Loan Receipt Agreement. Release.*

In a tort action against an electric company by a manufacturer whose property was damaged by a power failure caused by the breaking of a cable conduit during the digging of a post hole by a fence company

---

[1] New England Power Service Company. Both defendants are sometimes referred to herein in the singular.

engaged by the defendant to install a fence around a substation, where it appeared that the plaintiff was paid the amount of the damage to his property by the fence company's liability insurer and signed an agreement wherein he acknowledged receipt of the money from the insurer on behalf of the fence company "as a loan, without interest, repayable only out of any proceeds of any recovery upon any claims or causes of action" which the plaintiff might have arising out of the accident, and appointed the insurer his attorney in fact to conduct any and all legal proceedings in connection therewith at the insurer's sole expense, and there was nothing to show that the agreement was not what it purported to be, it was valid as a loan agreement, and the plaintiff's claim was not satisfied nor the defendant released from liability to him by the mere payment of the money.

TORT. Writ in the Superior Court dated July 19, 1961.

The action was heard by *Vallely,* J.

*Gerald F. O'Neill, Jr.,* for the plaintiffs.

*Francis H. George* for the defendants.

WILKINS, C.J. The plaintiff trustees, doing business as Crocker Burbank & Company Association (Crocker Burbank), carried on a manufacturing business in Fitchburg. One of their mills was furnished with electricity by the defendant through its substation which was located on their real estate. In April, 1960, the defendant built a new substation on the site of the old, and engaged Armor Fence Company to install a fence around it. There was a dispute as to whether the defendant informed the fence company of the existence of a conduit carrying power cables from the old substation to a transformer and then to the mill. In the digging of a post hole the conduit was broken, and, in consequence, on June 20, 1960, a power failure caused damage in the amount of $10,144 to property of Crocker Burbank.

The present controversy has to do with the effect of a so called loan receipt signed by Crocker Burbank when they were paid $10,144 by Liberty Mutual Insurance Company (Liberty), which carried liability insurance for the fence company.

This action of tort is for negligent injury to the plaintiffs' property. The case was heard on a statement of agreed facts by a judge, who ordered judgment for the defendants

and reported his rulings to this court. G. L. (Ter. Ed.) c. 231, § 111.

In the loan receipt agreement Crocker Burbank acknowledged the receipt from Liberty on behalf of the fence company of the money ''as a loan, without interest, repayable only out of any proceeds of any recovery upon any claims or causes of action'' that Crocker Burbank might have arising out of the accident, and appointed Liberty their attorney in fact with sole and irrevocable power to conduct any and all legal proceedings in connection with the accident at Liberty's sole expense.

The judge ruled that the plaintiffs could not recover. The parties have stipulated that if the judge's ruling was in error and the plaintiffs are not barred from prosecuting this action, judgment should be entered for the plaintiffs in the sum of $5,072; otherwise there should be judgment for the defendants.

A loan receipt agreement similar to that in the case at bar but made between a plaintiff and his own insurer or a stranger has been held to constitute a valid loan which does not bar the plaintiff from prosecuting his cause of action. *National Shawmut Bank* v. *Johnson,* 317 Mass. 485, 488. *Luckenbach* v. *W. J. McCahan Sugar Ref. Co.* 248 U. S. 139, 147–149. *First Natl. Bank* v. *Lloyd's of London,* 116 F. 2d 221, 226 (7th Cir.). See *August A. Busch & Co. of Mass. Inc.* v. *Liberty Mut. Ins. Co.* 339 Mass. 239.

The validity of the loan receipt agreement between the plaintiff and the insurer of a party under possible tort liability to the plaintiff presents a question of first impression in this Commonwealth. Its validity, however, has been upheld elsewhere. *Western Spring Serv. Co. Inc.* v. *Andrew,* 229 F. 2d 413, 418–419 (10th Cir.). *Wilson* v. *Anderson,* 113 Colo. 396, 400. *Klukas* v. *Yount,* 121 Ind. App. 160, 164–165. The reasoning in these cases is not based upon full discussion and leaves much to be desired. The result, however, is desirable. The injured plaintiff, who is allowed funds while his claim is litigated, is saved from becoming a victim of the law's delays. We are not disturbed by the

argument that a loan receipt agreement is a device to evade the rule that there can be no contribution among tortfeasors. There obviously was no decision to this effect while the rule prevailed (see now G. L. c. 231B, inserted by St. 1962, c. 730); and there never was much logic behind the rule at any time. We shall not adopt this argument for the first time now.

The defendant contends that the claim of Crocker Burbank has been satisfied in full. This ignores the plain phraseology of the document under which Crocker Burbank are bound to repay the $10,144 received from Liberty out of the proceeds of any recovery. There being nothing to show that the agreement was not the loan it purports to be, we are not disposed to set it aside. Likewise it is unsound to contend that the mere fact of payment releases the defendant. We think it was error to rule that the plaintiffs cannot recover.

In accordance with the terms of the report, judgment is to be entered for the plaintiffs in the sum of $5,072.

*So ordered.*